UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DIEUNE DUMERVIL,<br><br>Petitioner,<br><br>v.<br><br>BRIAN ENGLISH, SAM OLSEN, TODD M. LYONS, and MARKWAYNE MULLIN,<br><br>Respondents. | CAUSE NO. 3:26cv580 DRL-SJF |

OPINION AND ORDER

Immigration detainee Dieune Dumervil, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States. The Warden answered the petition, and Mr. Dumervil replied. In addition, the parties submitted supplemental briefing.

As a preliminary matter, Mr. Dumervil was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d 946, 952 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021). He objects to the dismissal of the

noncustodial respondents because those officials exercise legal control over post-removal-period detention decisions. He provides no authority, however, for the proposition that the custodial Warden, through his federal counsel, does not adequately represent the interests of the noncustodial respondents. The court concludes that dismissal of the non-custodial respondents without prejudice is appropriate. For clarity, the court refers to the responding party as the Warden from this point forward.

Mr. Dumervil is a Haitian national who attempted to enter the United States at the Brownsville, Texas Port of Entry on July 14, 2023 [8-1]. He did not possess valid entry documents, so he was served with a notice to appear, charging him with being removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for not having valid entry documents. He was then paroled into the United States. The next year, in October 2024, Mr. Dumervil filed an application for Temporary Protected Status (TPS),[1] and he was granted employment authorization, valid through November 2029 [1-3; 1-5].

Mr. Dumervil's immigration records reveal two criminal arrests, one on July 27, 2024 for simple assault (domestic violence) and one on November 15, 2024 for simple assault (domestic violence) [8-1]. Mr. Dumervil says without contradiction that the second arrest was not for a separate charge, but rather he was arrested pursuant to a warrant on the July

[1] A noncitizen who has been granted TPS shall not be removed from the United States while the status is in effect and may receive authorization to work in the United States. *See* 8 U.S.C. § 1254a(a)(1). Further, "[a]n alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4). If a noncitizen establishes "a prima facie case of eligibility for benefits under paragraph (1)" the noncitizens "shall be provided such benefits" until "a final determination with respect to the alien's eligibility for such benefits under paragraph (1) has been made[.]"8 U.S.C. § 1254a(a)(4)(B).

2024 charge. After this second arrest, United States Immigration and Customs Enforcement (ICE) encountered him in jail and took him into custody on November 18, 2024. The July 2024 assault charge was dismissed on December 17, 2024 [1-4].

Mr. Dumervil was ordered removed by an immigration judge on April 16, 2025 [8-1]. The Board of Immigration Appeals affirmed the removal order and dismissed the appeal on September 18, 2025. Mr. Dumervil filed a petition for review and a motion to stay his removal with the Third Circuit Court of Appeals on September 30, 2025. *See Dumervil v. Attorney General*, No. 25-2913 (3rd Cir. term. July 15, 2026). The Third Circuit temporarily granted the stay until it could consider the stay motion but then vacated the temporary stay and denied the motion on January 7, 2026. The petition for review was dismissed on July 15, 2026 for failure to file a brief.

On April 8, 2026, Mr. Dumervil, through counsel, requested a 90-day post-order custody review, arguing that he should be released because he was neither a danger to society nor a flight risk, and because he could not be removed to Haiti when the Immigration and Nationality Act prohibited removal of an individual who had applied for TPS and was *prima facie* eligible for its protection [1-8]. ICE did not respond to the request for a custody review. ICE inquired whether Mr. Dumervil would accept removal to Mexico, but Mr. Dumervil asserted a fear of persecution there.

On May 5, 2026, United States Citizenship and Immigration Services (USCIS) sent Mr. Dumervil a letter, informing him of its intent to withdraw his pending TPS application because it appeared that a July 27, 2024 arrest made him ineligible for TPS relief [8-1]. He was given until June 8, 2026 to submit information to retain his TPS.

Mr. Dumervil filed this habeas petition, arguing that his continued detention was unlawful because his removal was not reasonably foreseeable. He argued his removal was not reasonably foreseeable because he cannot be removed while his TPS application remains pending. He also argued he was denied a post-order custody review in violation of his due process rights.

In answering the petition, the Warden (though his federal counsel), provides a declaration from a deportation officer, stating the steps that have been taken to effectuate Mr. Dumervil's removal [8-2]. He attests that on January 10, 2026, three days after the Third Circuit vacated the temporary administrative stay, ICE Enforcement and Removal Operations (ERO) submitted a repatriation nomination request to the government of Haiti. He continues that, on March 17, 2026, ERO issued Mr. Dumervil a Form I-269, Certificate of Identity for Departure from the United States, which is a document that can be used by the Department of Homeland Security instead of a travel document or passport as an identity document for one-time travel to depart the United States. The deportation officer states that, other than the pending TPS application, which is under review for withdrawal, there is no foreseeable impediment to Mr. Dumervil's removal. If USCIS does withdraw and deny Mr. Dumervil's TPS, ICE ERO will expeditiously coordinate removal by commercial air or on an ICE initiated charter. The Warden argues that Mr. Dumervil's removal can be effectuated once USCIS decides the TPS application, so his removal is reasonably foreseeable. In a supplemental briefing, the Warden provided evidence that as of June 29, 2026, USCIS withdrew Mr. Dumervil's TPS [18-1].

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Dumervil's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits of the petition, the court follows the analysis set forth in *Zadvydas*. By statute, noncitizens who are subject to a final order of removal must be detained for a period of 90 days, during a "removal period." 8 U.S.C. §§ 1231(a)(1), (a)(2). This removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration confinement. 8 U.S.C. § 1231(a)(1)(B). Mr. Dumervil asserts, and the Warden does not contest, that Mr. Dumervil entered the removal period when the Third Circuit denied his motion for a stay on January 7, 2026. The court accepts that date for purposes of this order. The removal period thus ended April 7, 2026.

Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of

removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[2] The Warden relies on Section 1231(a)(6) as the basis for Mr. Dumervil's current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. Indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular

---

[2] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute removal. *Id.* at 700-01. The Warden argues Mr. Dumervil filed this while he was still in the six-month presumptively reasonable period of detention, which would have ended on July 7, 2026. At this point, however, Mr. Dumervil's post-removal-order detention has exceeded nine months, so the court will proceed to determine whether Mr. Dumervil's removal is reasonably foreseeable.

The court has the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.* at 699; *see also* 28 U.S.C.

§ 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. In this, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700.

The petitioner bears the initial burden. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). If he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

Mr. Dumervil's detention has now passed the six-month presumptively reasonable period of detention, so the inquiry turns to whether he has provided good reason to believe his removal is not significantly likely in the reasonably foreseeable future. He need not show that deportation is "impossible" or prove "the absence of *any* prospect of removal," *Zadvydas*, 533 U.S. at 702, yet he must typically offer something more than the mere passage

of time. Though Congress may have "doubted the constitutionality of detention for more than six months," the passing of this presumptive six-month period "does not mean that every alien not removed must be released." *Id.* at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) ("detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process"). That said, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Zadvydas*, 533 U.S. at 701.

Here, with the withdrawal of Mr. Dumervil's TPS, he no longer has good reason to believe his removal cannot be carried out in the reasonably foreseeable future. The Warden provided evidence that the only impediment to Mr. Dumervil's removal was his pending TPS application. Otherwise, ICE had the necessary documents to remove Mr. Dumervil to Haiti. On this record, Mr. Dumervil's removal remains reasonably foreseeable.

Mr. Dumervil additionally argues that his detention is unlawful because ICE failed to follow its own regulations regarding a 90-day post-order custody review. *See* 8 C.F.R. § 241.4(h). To the extent this amounts to a regulatory violation, it is harmless. The regulations provide that this review will occur "[p]rior to the expiration of the removal period" to determine whether to maintain a noncitizen in custody if his removal could not be achieved in the 90-day removal period. 8 C.F.R. § 241.4(h)(1). That initial post-order custody review consists of "a review of the alien's records and any written information submitted in English to the district director by or on behalf of the alien" and may include an interview with the noncitizen at the discretion of the reviewing officer. *Id.* Among the factors

that must be met for release is that "[t]ravel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest." 8 C.F.R. § 241.4(e)(1). The record in this case shows that the necessary documents for his removal are available, and without TPS protection, there is no impediment to his removal. It is unclear what purpose initiating the custody review process would now serve, so the failure to provide one is harmless error. Should his removal not, in fact, occur soon, the court expects ICE will provide the appropriate administrative review to determine whether his continued detention is authorized.

For these reasons, the court:

(1) DISMISSES Markwayne Mullin, Secretary of Homeland Security; Todd M. Lyons, Acting Director of United States Immigration and Customs Enforcement; and Sam Olsen, Field Office Director of Chicago ICE Field Office; and

(2) DENIES the petition (ECF 1) and DIRECTS the clerk to close this case.

SO ORDERED.

September 25, 2026

*s/ Damon R. Leichty*
Judge, United States District Court